## El Municipio de Gurabo *v.* The Juncos Central Company.

### Apelación procedente de la Corte de Distrito de Humacao.

No. 752.—Resuelto en mayo 23, 1912.

Injunction—Suspensión de los Negocios Generales de una Corporación—Notificación de la Solicitud.—La presente demanda de *injunction* tiene por objeto impedir a la compañía demandada que continúe usando las vías férreas que tiene tendidas sobre terrenos del municipio demandante. *Se resolvió* que este caso no está comprendido enteramente dentro de las prescripciones de la sección 9 de la Ley de *Injunction* de marzo 8 de 1906, porque la orden restrictiva de la corte no operaba como una suspensión de los negocios generales y ordinarios de la corporación demandada, los cuales afectaba en parte únicamente. Este error no produce en este caso la nulidad de los procedimientos posteriores, porque la parte perjudicada aceptó la regla de la corte y presentó de nuevo su solicitud de *injunction*, notificándosela a la demandada.

Id.—Demanda de Injunction—Procedimiento—Determinación de los Derechos de las Partes.—Cuando, como en el caso de autos, se interpone una demanda de *injunction*, cuyo fin principal y único es obtener un *injunction* perpetuo, los demandados deben ser notificados debidamente y pueden oponer excepciones previas o contestar la demanda, según lo estimen pertinente. Si el pleito no se decide por las alegaciones, procede la práctica de las pruebas por una u otra parte y luego la sentencia basada en los méritos del caso. Dentro de éste puede solicitarse la expedición de un *injunction* preliminar, y, en muchas ocasiones, el hecho de conceder o de negar el *injunction* preliminar, no prejuzga necesariamente la consesión o la negativa del *injunction* perpetuo. Cuando la ley no fija reglas precisas para la tramitación de los pleitos de *injunction*, como sucede en Puerto Rico, el curso de los mismos debe ser dirigido por la corte aplicando en cuanto sea posible los trámites del juicio ordinario y abreviando o extendiendo los términos según la naturaleza de cada caso.

Id.—Desestimación de Plano de una Demanda de Injunction—Discreción de la Corte.—Dada la naturaleza especial del *injunction*, y descansando como descansa su concesión previa o final, especialmente la primera, en la sana discreción de la corte, ésta tiene autoridad para rechazar de plano una demanda o para desestimarla totalmente, después de una vista para resolver sobre el *injunction* preliminar solicitado dentro del pleito de *injunction*, cuando se convence de que el demandante carece en absoluto de razón, y en tales casos, la decisión de la corte resuelve definitivamente el pleito.

Id.—Desestimación de la Demanda de Injunction—Enmienda de la Demanda.—Cuando por la sola lectura de una demanda de *injunction* no puede apreciarse si carece enteramente de fundamento, ni si puede enmendarse; comete error la corte que al resolver sobre la solicitud de *injunction* preliminar, desestima totalmente el pleito.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. Luis Llorens Torres y Miguel Guerra.*

Abogados de los apelados: *Sres. Hartzell y Rodríguez Serra.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

El municipio de Gurabo presentó, en 12 de junio de 1911, una demanda sobre *injunction* en la Corte de Distrito de Humacao contra The Juncos Central Company, alegando los siguientes hechos:

"1. Que por resolución del concejo municipal de Gurabo, el alcalde de dicho municipio quedó autorizado para esta demanda.

"2. Que la demandada es corporación organizada bajo las Leyes de Puerto Rico, con oficina principal abierta dentro del Distrito Judicial de Humacao.

"3. Que la corporación demandada se dedica a la siembra de cañas y a la elaboración de azúcar; y a ese fin mantiene y explota, para el transporte de dichos frutos y productos, un ferrocarril privado cuyas vías cruzan la jurisdicción de Gurabo de este a oeste, en su parte septentrional, partiendo desde los edificios de elaboración de la corporación demandada en la dirección y con los rumbos que más abajo se dirán.

"4. Que la corporación demandada, alega además la parte actora, sin derecho, permiso, concesión ni título alguno construyó y emplazó su mencionada vía férrea privada sobre los siguientes caminos del municipio de Gurabo:

"(*a*) Camino llamado de Jagua que desde el pueblo de Gurabo conduce a los barrios de Jagua, Celada y Quebrada Infierno. Este camino lo atraviesa el ramal de la vía férrea que partiendo de la central de la demandada conduce a una finca rústica de Manuel Méndez, antes Sucesión Borrás, en el sitio en que dicho camino pasa por el barrio.

"(b) Camino que conduce desde el pueblo de Gurabo al barrio de las Masas, sitio llamado Hato Nuevo. Este camino lo atraviesa el ramal, digo, el mismo ramal de la vía férrea antes descrito.

"(c) Camino de Hato Nuevo al barrio del Mamey.

"5. Que las vías del ferrocarril que explotá la corporación demandada, atraviesan el camino (a) en una extensión de diez metros de largo por dos varas de ancho.

"Que el camino (b) lo atraviesan en idéntica dimensión; con el detalle particular de que las vías están colocadas, en este camino, en un alto nivel construído casi al mismo medio de dicha vía de comunicación.

"Que al camino (c) lo atraviesan dichas vías de este a oeste y después de internarse en propiedad privada vuelve a atravesarlo en sentido transversal oblicuo en una extensión de cincuenta y dos metros, más o menos; desde este punto continúa lindando con el camino sin cerca alguna que lo divida en una larga extensión; vuelve a internarse en propiedades de la Porto Rican American Tobacco Co. y sale nuevamente al camino de Hato Nuevo y utiliza sus orillas en una extensión de un kilómetro aproximadamente; atravesándolo después en una extensión de nueve metros más o menos.

"6. Que dichos caminos municipales se encuentran registrados en la oficina del Comisionado del Interior a nombre del municipio demandante, en los libros correspondientes.

"7. Que la corporación demandada al ocupar con sus vías los caminos municipales que se acaban de describir, obstaculiza el libre tránsito de coches y carros, poniendo en peligro las vidas de los transeuntes; y siendo dichos caminos municipales propios para el tránsito de carros y coches, los ha inutilizado para tal uso público; impidiendo el desagüe natural de los mismos y haciendo imposible su reparación, privando así a la comunidad del cómodo y franco disfrute de dichas vías municipales.

"8. Que el municipio demandante jamás prestó su consentimiento a los referidos despojos y violación realizados por la demandada sobre dichos caminos.

"9. Que el demandante no puede construir los expresados caminos vecinales por sitios distintos del trazado que tienen; y que los habitantes de los barrios arriba aludidos, no pueden desenvolver sus negocios e industrias sin tener caminos para el tráfico de sus vehículos hasta la población, sin riesgo para sus personas y sin incomodidades para los trasportes."

La súplica de la demanda, es como sigue:

"En mérito de lo expuesto el demandante a esta Hon. corte suplica se sirva expedir el auto de *injunction* contra la corporación demandada, restringiéndola de seguir y continuar manteniendo y explotando el referido ferrocarril privado que posee en los sitios en que sus vías atraviesan y ocupan dichos caminos a las orillas de los mismos; con los demás pronunciamientos del caso y condenando a dicha demandada a pagar las costas y desembolsos de este pleito."

La corte fijó el 22 de junio de 1911 para que la demandada compareciera a exponer las causas por las cuales no debería concederse el *injunction* solicitado, y, además, le prohibió que continuara explotando el ferrocarril hasta nueva orden de la corte.

El 14 de junio la demandada presentó una "solicitud para que se deje sin efecto un *injunction* provisional," y alegó, en resumen, que se le había prohibido mantener y explotar cierto ferrocarril hasta nueva orden, sin que se le hubiera notificado la demanda, y que constituyendo el funcionamiento de dicho ferrocarril uno de sus negocios generales y ordinarios, se había infringido lo dispuesto en la sección 9 de la ley de 8 de marzo de 1906, sobre *injunctions*.

La corte resolvió de conformidad con la demandada, dejando sin efecto su orden de 12 de junio, sin perjuicio de que la parte demandante procediera, si lo creía conveniente, a presentar nueva solicitud cumpliendo con el requisito de la previa notificación a la demandada.

Aparece luego en la transcripción la copia de la notificación al presidente de la corporación demandada, redactada en estos términos: "Sírvase quedar notificado de que el próximo día veinte y cuatro del actual y a las diez de su mañana, la representación del municipio demandante presentará a la Corte de Distrito de Humacao, la solicitud y demanda de *injunction* cuya copia se le acompaña adjunta, y allí entonces se pedirá a la referida corte nueva orden de *injunction* preliminar por los motivos que aparecen de la demanda aludida. Humacao, P. R., junio 19 de 1911.   Por el compañero Luis

Llorens Torres. (Firmado) Miguel Guerra. Abogado del demandante.''

Sigue la ''oposición'' de la demandada a que se conceda un *injunction* preliminar mientras se sustancia este pleito, en cuyo documento dicha demandada alega extensamente los motivos que tiene ''para oponerse a que se conceda en este caso una orden restrictiva preliminar, reservándose el derecho de contestar la demanda y formular las defensas que le competan, en el curso ordinario de este pleito,'' y termina suplicando ''que se niegue la orden preliminar de *injunction* que se pretende.'' Dicho escrito fué admitido con la oposición del demandante fundado en que no se le había notificado previamente. La oposición está jurada y a la misma se acompañó una comunicación del Comisionado del Interior de Puerto Rico, de 23 de junio de 1911, concediendo un permiso provisional a la demandada para continuar explotando su ferrocarril privado, pasando por los caminos a que se refiere la demanda de *injunction*.

En su alegato la parte recurrente señala como cometidos por la corte de distrito, los siguientes errores:

''1. El haber dejado sin efecto la orden preliminar de *injunction*, a la moción *ex parte* de la demandada.

''2. El haber resuelto que la parte demandante está obligada a notificar previamente a la demandada de la presentación de la solicitud de *injunction;* y

''3. El haber declarado nuestra demanda sin lugar, sin haberse aducido otra prueba que la de la carta del Comisionado del Interior referida, pues que los hechos jurados en la demanda justifican la expedición de un auto de *injunction*.''

La sección 9 de la vigente ley sobre *injunction,* aprobada en 8 de marzo de 1906, dice textualmente como sigue:

''No podrá concederse un *injunction* para suspender los negocios generales u ordinarios de una corporación, sin que medie debida notificación de la solicitud presentada con tal objeto a los respectivos oficiales de la corporación, o al agente administrador de la misma,

excepto en los casos en que El Pueblo de Puerto Rico fuere parte en el procedimiento.''

El caso de la demandada no está comprendido enteramente dentro de las prescripciones de la sección 9 que hemos transcrito, porque en realidad de verdad la orden restrictiva de la corte no operaba como una suspensión de los negocios generales y ordinarios de la corporación demandada, (*Golden Gate M. Co.* v. *Superior* Ct., 65 Cal., 187), como exige la ley. Los afectaba en parte, pero no en su totalidad. La resolución de la corte no estuvo, pues, bien fundada, pero el error cometido no lleva consigo la anulación de los procedimientos posteriores, ya que el mismo demandante se avino a la regla de la corte y presentó de nuevo su solicitud de *injunction,* notificándola a la demandada.

Examinemos el tercero y último de los errores señalados.

En este caso no se presentó una solicitud de *injunction* dentro de un pleito ordinario previamente establecido, sino que se interpuso una demanda de *injunction.* El demandante sometió su caso por entero a la decisión de la corte y el pleito debió tramitarse de acuerdo con la ley hasta dictar en el mismo la resolución final que procediera.

Cuando se inicia un caso en una corte de justicia cuyo fin principal y único es obtener un *injunction* perpetuo, los demandados deben ser notificados debidamente y pueden oponer excepciones previas o contestar la demanda, según lo estimen pertinente. Si el pleito no se decide por las alegaciones, procede la práctica de las pruebas por una y otra parte y luego la sentencia basada en los méritos del caso. Dentro de éste puede solicitarse la expedición de un *injunction* preliminar, y, en muchas ocasiones, el hecho de conceder o de negar el *injunction* preliminar, no prejuzga necesariamente la concesión o la negativa del *injunction* perpetuo.

Cuando la ley no fija reglas precisas para la tramitación de los pleitos de *injunction,* como sucede en Puerto Rico, el curso de los mismos debe ser dirigido por la corte aplicando

en cuanto sea posible los trámites del juicio ordinario, abreviando o extendiendo los términos según la naturaleza de cada caso. Una vez que todas las partes realmente interesadas estén sometidas legalmente a la jurisdicción de la corte, dichas partes deben tener una amplia y segura oportunidad de hacer sus alegaciones y practicar sus pruebas, cuando éstas sean necesarias, a fin de que la corte pueda decidir el pleito con entero conocimiento de las cuestiones debatidas en el mismo.

Ahora bien, dada la naturaleza especial del *injunction,* y descansando como descansa su concesión previa o final, especialmente la primera, en la sana discreción de la corte, ésta tiene autoridad para rechazar de plano una demanda, o para desestimarla totalmente después de una vista para resolver sobre el *injunction* preliminar solicitado dentro del pleito de *injunction,* cuando se convence de que el demandante carece en absoluto de razón, y, en tales casos, la decisión de la corte resuelve definitivamente el pleito.

"Cuando una demanda solicitando un *injunction* carece enteramente de equidad, la corte puede negar el remedio con la sola lectura de la demanda y sin que sea necesario dictar una orden (*rule nisi*) para que el demandado muestre causa contra la petición del *injunction.*" (2 High on *Injunction,* 1197, citando los casos de *Remshart* v. *The Savannah and Charleston R. Co.,* 54 Ga., 579; *Brown* v. *Wilson,* 56 Ga., 534.)

"Cuando aparece de la solicitud de *injunction* que no hay fundamento para el remedio que se pide, la solicitud puede desestimarse en la vista para el *injunction* preliminar sin requerirse que el demandado conteste." (*Sauls* v. *Freeman,* 24 Florida, 209; 12 Am. St. Rep., 190.)

"Si la solicitud carece de equidad, la corte puede desestimarla sin ulteriores alegaciones. En un pleito sobre *injunction* solamente, en el cual al oirse una moción en el mismo, es negada, puede negarse propiamente al demandado permiso para contestar, y si la solicitud carece de equidad, puede ser

desestimada." (*Field* v. *Village of Western Springs*, 181 Ill., 186.)

Hemos creído necesario consignar lo que hemos expuesto, porque, según resulta del récord, ambas partes acudieron a la Corte de Distrito de Humacao, el 24 de junio de 1911, para discutir sobre la expedición de una orden de *injunction* preliminar y el juez no se limitó a negar dicha orden, sino que desestimó totalmente la demanda interpuesta y por consiguiente resolvió definitivamente el pleito.

Las autoridades indicadas sostienen el curso adoptado por el juez del distrito. Veamos ahora si su resolución está bien fundada, esto es, si la demanda en este caso carece en absoluto de fundamento para obtener el remedio solicitado.

Los motivos que tuvo el juez de distrito para desestimar la demanda, fueron los siguientes:

1. Que de los hechos alegados no se desprende una injuria irreparable;

2. Que no se consignan hechos suficientes para demostrar que el ferrocarril obstruye el libre tránsito por los caminos. No basta consignar la conclusión, sino que es preciso expresar los hechos en que se basa;

3. Que el demandante tiene un remedio adecuado y eficaz en el curso ordinario de la ley: una acción sobre levantamiento de vías y daños y perjuicios;

4. Que la demandada tiene ya establecida la vía y en operación, sin que se alegue en la demanda el motivo por el cual el demandante no solicitó el *injunction* a su debido tiempo, y finalmente;

5. Que la concesión del *injunction* no causaría beneficio al demandante y sí gran perjuicio a la demandada, porque el demandante nada ganaría con parar la marcha de los carros quedando la vía en la misma condición en que estaba, y a la demandada en cambio se le privaría del funcionamiento de su ferrocarril para la conducción de sus cañas y productos.

Hemos estudiado cuidadosamente la demanda en relación con los anteriores motivos y con la jurisprudencia aplicable,

y, a nuestro juicio, si el juez del distrito se hubiera limitado a declarar sin lugar la petición de *injunction* preliminar, concediendo, si lo solicitaba, un plazo razonable al demandante para enmendar su demanda, hubiera aplicado la ley y ejercitado su discreción correctamente.

Pero al desestimar la demanda, el juez del distrito fué más lejos de lo que debía. Ya hemos sostenido que puede un juez desestimar una demanda de *injunction,* pero hemos dicho también que es cuando la demanda carece enteramente de fundamento y se ve claramente que no puede enmendarse, y esto no se puede asegurar en el caso del municipio de Gurabo por la sola lectura de la demanda.

Si después de formuladas las alegaciones por ambas partes y practicadas las pruebas en su caso, el juez se confirma en el criterio que formara para negar el *injunction* preliminar, entonces procederá que niegue el perpetuo y dicte la sentencia que termine definitivamente el pleito.

Por las razones expuestas, opinamos que la orden recurrida debe revocarse en cuanto desestimó totalmente la demanda. El caso debe devolverse a la corte de su origen, para ulteriores procedimientos no inconsistentes con esta opinión.

*Revocada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, Wolf y Aldrey.