ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| DAYNA AYALA RIOS<br><br>Apelante<br><br>v.<br><br>TOCARS LLC H/N/C TOCARS TOYOTA Y OTROS<br><br>Apelada | **KLAN202400074** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Arecibo<br><br>Civil Núm. AR2023CV00342<br><br>Sobre: Procedimiento Sumario Ley Número 2 de 17 de octubre de 1961, según Enmendada. |
|---|---|---|

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 11 de marzo de 2024.

Comparece ante este foro la Sra. Dayna Ayala Ríos (señora Ayala o apelante) mediante recurso de apelación[1] presentado el 19 de enero de 2024, el cual acogemos como *certiorari*, y nos solicita la revisión de la *Orden* notificada el 9 de enero de 2024 por el Tribunal de Primera Instancia, Sala Superior de Arecibo. Mediante el referido dictamen, el foro primario denegó su solicitud de relevo de sentencia presentada al amparo de la Regla 49.2 de Procedimiento Civil.

Por los fundamentos que exponemos a continuación, **EXPEDIMOS** el auto de certiorari y **CONFIRMAMOS** el dictamen recurrido.

**I.**

---
[1] Por tratarse de un trámite post-sentencia, acogemos el recurso de epígrafe como una petición de *certiorari*.

El caso ante tuvo su origen el 23 de febrero de 2023 cuando la señora Ayala presentó una *Querella* en contra de Tocars LLC h/n/c/ Tocars Toyota (Tocars Toyota o parte apelada) en violación a la Ley Núm. 3 del 13 de marzo de 1942, según enmendada, conocida como la *Ley de Protección de Madres Obreras*, 29 LPRA secs. 467-474.[2] A su vez, se acogió al procedimiento sumario establecido en la Ley Núm. 2 de 17 de abril de 1961. En esencia, expresó que trabajó para Tocars Toyota como Analista de Caja desde el 12 de diciembre de 2021 hasta el 4 de marzo de 2022, y devengaba un salario de $11.00 la hora, trabajando 5 días de la semana a tiempo parcial. Alegó que, al otro día de haber informado que estaba embarazada, sin justificación legítima, fue despedida. Asimismo, sostuvo que luego de su despido, la parte apelada contrató a otra analista de caja. Por lo tanto, solicitó una indemnización por los daños expuestos ascendentes a $89,150.00.

Por su parte, el 23 de marzo de 2023, Tocars Toyota presentó *Contestación a la Querella*, sin someterse a la jurisdicción.[3] Mediante esta, negaron que el despido de la apelante fuera uno injustificado, sino que alegaron afirmativamente que, la terminación del empleo fue dentro de su periodo probatorio, puesto que, no estaba cumpliendo con las funciones de su puesto y su desempeño era negligente en cuanto al manejo de fondos de la empresa.

Posteriormente, Tocars Toyota presentó una *Solicitud de Sentencia Sumaria*.[4] En síntesis, reiteraron

---

[2] *Querella*, anejo XV, págs. 160-168 del apéndice del recurso.
[3] *Contestación a la Querella*, anejo XIV, págs. 148-159 del apéndice del recurso.
[4] *Solicitud de Sentencia Sumaria*, anejo XII, págs. 73-145 del apéndice del recurso.

que la determinación sobre no aprobarle el periodo probatorio y dar por terminado la relación obrero-patronal a la señora Ayala, fue tomada el 2 de marzo de 2022. Esto como consecuencia de la negligencia en la ejecución de sus funciones, errores y faltas cometidas durante dicho periodo probatorio. Específicamente, constataron como hechos incontrovertidos que, el 13 de diciembre de 2021, la apelante firmó un contrato de periodo probatorio, el cual establecía que dicho periodo era de nueve (9) meses, y de aprobarlo pasaría a ser empleada regular. No obstante, añadieron que la Sra. Sonia Meléndez, su supervisora, le tuvo que repetir, tanto verbal como por escrito, las instrucciones y protocolos para que cumpliera con las funciones de su puesto. Añadieron que, luego de los errores e incumplimientos por parte de la apelante, el 2 de marzo de 2022, la señora Meléndez mediante una carta dirigida a la Gerente de Recursos Humanos, recomendó y solicitó que no le fuera aprobado el periodo probatorio de la señora Ayala.

El 22 de agosto de 2023, el foro primario notificó una *Orden,* mediante la cual le indicó a la parte apelante que reaccionara a la moción de sentencia sumaria e informó que en la vista del 13 de septiembre de 2023 atenderían todos los asuntos.[5]

El 11 de septiembre de 2023, la apelante solicitó una prórroga de 20 días para presentar su oposición a la solicitud de sentencia sumaria.[6]

---

[5] *Orden*, anejo XI, pág. 72 del apéndice del recurso.
[6] Véase, *Moción Solicitando Prórroga para Presentar Oposición a Solicitud de Sentencia Sumaria*, entrada núm. 26 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

El día de la vista, según surge de la minuta, la representación legal de la apelante solicitó una prórroga adicional para presentar su oposición a la moción de sentencia sumaria.[7] Así las cosas, el foro primario les concedió a las partes hasta el 3 de octubre para que cursaran un interrogatorio y producción de documentos, siendo contestados no mas tarde del 3 de noviembre de 2023. Finalmente, señaló vista sobre el estado de los procedimientos para el 1 de febrero de 2024.

Posteriormente, el 6 de octubre de 2023, la señora Ayala presentó *Moción Solicitando un Término Adicional de 10 días para presentar Oposición a Solicitud de Sentencia Sumaria*.[8]

Por su parte, el 30 de noviembre de 2023, Tocars Toyota instó una *Moción en Solicitud para que se Dicte Orden y se de por Sometida la Solicitud de Sentencia Sumaria […], Sin Oposición*.[9] Señaló que, el término adicional que le fue otorgado a la apelante había expirado sin que hubiera presentado su oposición, o solicitara una prórroga adicional. Por consiguiente, solicitó que diera por sometida la moción de sentencia sumaria, sin oposición.

Así las cosas, el 21 de diciembre de 2023, el foro primario dictó *Sentencia,*[10] y acogió como ciertos todos los hechos propuestos por la parte apelada en su

---

[7] *Minuta*, anejo VIII, pág. 54 del apéndice del recurso.
[8] *Moción Solicitando un Término Adicional de 10 días para presentar Oposición a Solicitud de Sentencia Sumaria*, anejo VI, pág. 51 del apéndice del recurso.
[9] *Moción en Solicitud para que se Dicte Orden y se dé por Sometida la Solicitud de Sentencia Sumaria […], sin oposición*, anejo V, págs. 49-50 del apéndice del recurso.
[10] *Sentencia*, anejo III, págs. 26-47 del apéndice del recurso.

solicitud de sentencia sumaria, siendo estos los siguientes:

1. La Sra. Dayna Ayala firmó un Contrato de Periodo Probatorio para ser Analista de Caja el 13 de diciembre de 2021.

2. Dicho contrato establecía que estaría la Sra. Ayala durante nueve (9) meses en periodo probatorio.

3. Que de aprobar el mismo, pasaría a ser empleada regular bajo el puesto de Analista de Caja.

4. Que dentro de las funciones de la Sra. Ayala, estaba hacer las transacciones de pago de piezas, servicios y autos, según los clientes le fueran entregando las órdenes que detallaran la cantidad que debía cobrar.

5. Además, debía hacer los cuadres de caja diarios al finalizar su turno, clasificando los tipos de pagos, según los recibía.

6. También tenía dentro de sus funciones preparar al final de su turno los depósitos que se iban a efectuar.

7. En diciembre de 2021, la Sra. Dayna Ayala informó que iba de camino al hospital con dolor de cabeza, fiebre, vómitos y escalofríos.

8. Al enviar los resultados de laboratorio, el mismo indicaba que estaba embarazada.

9. La Sra. Sonia Meléndez, su supervisora, la felicitó y le indicó que pasaría la información.

10. Posteriormente la Sra. Dayna Ayala le informó a su supervisora que no estaba embarazada, que era un medicamento de tratamiento con el ginecólogo que hace que salga positivo la prueba de embarazo.

11. La Sra. Meléndez, durante su periodo probatorio, tuvo que repetirle a la Sra. Dayna Ayala, en muchas ocasiones de forma verbal y escrita, los pasos a seguir para el formulario de 8300 (IRS), al momento de cuadrar, cómo hacer recibos, corregir hojas de depósitos con cantidades incorrectas, darle de baja a los casos en sistema una vez estén cobrados por ella en caja, que el log de tablillas estuviera al día con la información correcta, cerrar las facturas de piezas y servicio correctamente para que al momento de cuadrar, estuviesen en los

reportes y otros más en los cuales ya se le había dado el adiestramiento.

12. El 3 de enero de 2022, se le envió un correo electrónico anejando el procedimiento para el control de las tablillas y el manejo del reporte.

13. El 26 de enero de 2022, su supervisora le envió un correo electrónico que indicaba que era necesario incluir la copia de la hoja de depósito, con el depósito y en el cuadre.

14. El 2 de febrero de 2022, la Sra. Sonia Meléndez Rosa le envió un correo electrónico a la Sra. Dayna Ayala y a la Sra. Taysha Santiago Valentín, solicitando que verificaran el "log de tablillas", para verificar si la información entrada por estas es igual a la brindada por "Ventas".

15. El 4 de febrero de 2022 la Sra. Sonia Meléndez Rosa le envió un correo electrónico a la Sra. Dayna Ayala y a la Sra. Taysha Santiago indicando lo siguiente: "Por favor, es necesario les den CF a los negocios en F&I. Este caso está pagado desde 01/28/2022 recibo 1000203 y no tiene cash funded."

16. El 10 de febrero de 2022, a las 10:06 a.m., la Sra. Meléndez le envió un correo electrónico a la Sra. Dayna Ayala Ríos y a la Sra. Taysha Santiago Valentín, solicitándole que repasaran el procedimiento de caja para ventas y el procedimiento de 8300. Esto para que estén claras con el procedimiento, "para cuando lleguen los vendedores sepan que hacer".

17. El 10 de febrero de 2022, a las 12:04 p.m., la Sra. Meléndez le envió un correo electrónico a la Sra. Dayna Ayala Ríos y a la Sra. Taysha Santiago Valentín, instruyendo sobre las entradas de los casos de Pentagon (PenFed).

18. Los correos de 2 y 10 de febrero de 2022, indican al final "Cualquier duda o pregunta me llaman", instrucción que se había dado desde un principio.

19. Estos correos electrónicos fueron enviados ante el incumplimiento de las instrucciones y protocolos ya instruidos.

20. El día 25 de febrero de 2022, la Sra. Dayna Ayala se descuadró por la cantidad de once dólares y diecisiete centavos ($11.17) al no cobrar al cliente el IVU en la factura de piezas CM20173.

21. El día 28 de febrero de 2022, se descuadró por la cantidad de treinta dólares ($30.00) ya que hizo el recibo 1000388 de Ventas por la cantidad de dos mil doscientos sesenta y cinco dólares ($2,265.00) y se le cobró al cliente por medio de VISA dos mil doscientos noventa y cinco dólares ($2,295.00).

22. El día 1 de marzo de 2022, se descuadró por la cantidad de veinte mil dólares ($20,000.00) ya que hizo el recibo 1000400 de Ventas con el modo de cobro incorrecto. El modo de cobro es un cheque certificado y escribió cheque comercial.

23. La Sra. Ayala admitió, además, que a pesar de haber sido instruida varias veces de preguntar a la Sra. Meléndez cualquier duda sobre las instrucciones o procesos, ésta deliberadamente decidió no hacerlo así, prefiriendo preguntarle solo a otra compañera de trabajo.

24. El 2 de marzo de 2022, y ante la cantidad de errores e incumplimientos de la Sra. Dayna Ayala, la Sra. Sonia Meléndez, supervisora la Sra. Ayala, recomendó y solicitó que no se le aprobara el periodo probatorio.

25. El mismo 2 de marzo de 2022, se coordinó y celebró una entrevista de trabajo a Amanda I. Figueroa Dávila, para la plaza de Analista de Caja.

26. El 2 de marzo de 2022, la Analista de Recursos Humanos, la Sra. Carina Quiñones Santiago, le informó mediante correo electrónico a la Sra. Sonia L. Meléndez Rosa, que la candidata Amanda I. Figueroa Dávila comenzaría el 14 de marzo como Analista de Caja.

27. El 3 de marzo de 2022, la Sra. Dayna Ayala no se personó a trabajar, pues estaba libre ese día.

28. El 3 de marzo de 2022, a las 5:23 p.m., la Sra. Dayna Ayala envió un mensaje de texto a su supervisora, la Sra. Sonia Meléndez Rosa, mediante el cual le indicó que estaba embarazada. Junto con el mensaje, envió copia del resultado de la prueba de embarazo.

29. En dicho texto le indicó que prefería que se mantuviera callado, y que lo notificaba para que a su vez le notificara a Recursos Humanos.

30. El 4 de marzo de 2022, al final de su turno, le fue entregada a la Sra. Dayna

Ayala, una carta que le notificaba que conforme lo suscrito en el Contrato del Periodo Probatorio, se prescindía de sus servicios.

31. Al entregársele la carta se le preguntó a la Sra. Ayala si tenía algo que decir, pero esta solo leyó la carta, se paró y se fue.

Asimismo, determinó que Tocars Toyota desconocía que la señora Ayala se encontraba en estado de embarazo cuando tomaron la decisión de no aprobarle el periodo probatorio, y por ende culminar la relación obrero-patronal. Por consiguiente, concluyó que la parte apelada no discriminó contra la apelante por razón de su embarazo, declarando *Ha Lugar* la solicitud de sentencia sumaria.

No obstante, el 8 de enero de 2024, la señora Ayala presentó *Solicitud de Relevo de Sentencia [...]*.[11] En esencia, alegó que hubo fraude al tribunal por la parte apelada, puesto que, estos presentaron un documento falso. Arguyeron que, Tocars Toyota en la contestación al segundo interrogatorio, esbozaron que el "memo" del 2 de marzo de 2022, donde la señora Meléndez no recomendaba la aprobación del periodo probatorio, no fue generado, sino hasta después que la señora Ayala notificó su embarazo. A su vez, sostuvo que no pudo presentar su oposición a la solicitud de sentencia sumaria, puesto que, para noviembre de 2023 todavía estaban en el proceso del descubrimiento de prueba autorizado por el foro primario.

Evaluada la solicitud de relevo de sentencia, el 9 de enero de 2024, el foro primario la declaró *No Ha*

---

[11] *Solicitud de Relevo de Sentencia Conforme a la Discreción Permitida al Tribunal al Amparo de la Ley Número 2 de 17 de octubre de 1961, según enmendada*, anejo II, págs. 2-25 del apéndice del recurso.

*Lugar*, y se reiteró en su determinación del 21 de diciembre de 2023.[12]

Inconforme, la señora Ayala presentó el recurso que nos ocupa y señala los siguientes errores:

> Primer Error: Erró el TPI al acoger el escrito de relevo de sentencia como una solicitud de reconsideración.
>
> Segundo Error: Erró el TPI al no acoger la solicitud de relevo de sentencia y permitir que continuaran los procedimientos del caso.
>
> Tercer Error: Erró el TPI al privar a la apelante de que el caso se ventilara en los méritos, sin agotar antes la imposición de medidas menos drásticas como la imposición de sanciones.

El 23 de febrero de 2024, los apelados presentaron su alegato en oposición.

Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del recurso de epígrafe.

## II.

### -A-

El *certiorari* es un recurso extraordinario y discrecional expedido por un tribunal superior a otro inferior, mediante el cual el primero está facultado para enmendar errores cometidos por el segundo, cuando "el procedimiento adoptado no esté de acuerdo con las prescripciones de la ley." Véase: Artículo 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491; McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz De León*, 176 DPR 913, 917-918 (2009). La expedición del auto descansa en la sana

---

[12] *Orden*, anejo I, pág. 1 del apéndice del recurso.

discreción del tribunal. *Medina Nazario v. McNeill Healthcare*, 194 DPR 723, 729 (2016).

El Artículo 4.006 (b) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003, 4 LPRA sec. 24y(b), establece la competencia del Tribunal de Apelaciones para atender y revisar discrecionalmente, mediante el recurso de *certiorari*, cualquier resolución u orden emitida por el Tribunal de Primera Instancia.

Para todo tipo de recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional. Estos son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En lo pertinente a este caso, el *certiorari* también es el recurso apropiado para solicitar la revisión de

determinaciones post sentencia. *IG Builders et al. v. BBVAPR*, supra, pág. 339. A esos efectos, nuestro Tribunal Supremo ha expresado que:

> Las resoluciones atinentes a asuntos post-sentencia no se encuentran comprendidas entre aquellas determinaciones de naturaleza interlocutoria categóricamente sujetas a escrutinio mediante el recurso de *certiorari*. De otra parte, por emitirse este tipo de decisión luego de dictada la sentencia, usualmente tampoco cualifica para el recurso de apelación provisto para dictámenes judiciales finales. Se corre el riesgo, por lo tanto, de que fallos erróneos nunca se vean sujetos a examen judicial simplemente porque ocurren en una etapa tardía en el proceso, tal como lo es la ejecución de sentencia. *IG Builders et al. v. BBVAPR*, supra.

**-B-**

La Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2, es el vehículo procesal mediante el cual una parte adversamente afectada por una sentencia puede solicitar el relevo de esta. *Pérez Ríos y otros v. Luma Energy, LLC,* 2023 TSPR 136, 213 DPR ___ (2023); *SLG Rivera-Perez v. SLG Díaz-Doe et al*, 207 DPR 636, 656-657 (2021); *López García v. López García*, 200 DPR 50, 59 (2018). El propósito de la precitada regla es proveer un justo balance entre dos intereses conflictivos. Ellos son, el asegurar que los pleitos se resuelvan en sus méritos, y, por otra parte, que las decisiones sean conforme a los principios de la justicia. *López García v. López García,* supra, pág. 60.

La Regla 49.2 de Procedimiento Civil contempla una serie de escenarios en los cuales el tribunal podrá relevar a una parte de los efectos de una sentencia dictada en su contra. Estos son:

> (a) error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que, a pesar de una debida diligencia, no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio de acuerdo con la Regla 48;

(c) fraude (incluso el que hasta ahora se ha denominado "intrínseco" y el también llamado "extrínseco"), falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de la sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continúe en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia. Regla 49.2 de Procedimiento Civil, supra.

No será suficiente que esté presente uno de los mencionados escenarios para que el tribunal deje sin efecto el dictamen notificado. El juzgador deberá evaluar el expediente del caso en su totalidad y determinar si bajo las circunstancias particulares del asunto amerita que se deje sin efecto la sentencia. *Dávila v. Hosp. San Miguel, Inc.,* 117 DPR 807, 817 (1986). Asimismo, el tribunal debe considerar los siguientes criterios: (1) cualquier defensa válida que pueda levantar la parte que se opone al relevo de sentencia; (2) el tiempo que transcurrió entre la sentencia y la solicitud del relevo; (3) el perjuicio que sufriría la parte opositora si se concede la solicitud del peticionario; y (4) el perjuicio que sufriría la parte promovente de dejarle desprovista del remedio solicitado. *Pardo v. Sucn. Stella*, 145 DPR 816, 825 (1998).

Es menester destacar que el mecanismo de relevo de sentencia es una facultad discrecional del tribunal de

instancia y debe ser interpretado liberalmente. En caso de duda, debe ser resuelta en favor de la parte que solicita el remedio. *Náter v. Ramos*, 162 DPR 616, 624-625 (2004). No obstante, cuando una sentencia es nula *ab initio*, el juzgador no tendrá discreción para relevar a una parte de los efectos de una sentencia. *Pérez Ríos y otros v. Luma Energy, LLC*, supra; *Náter v. Ramos*, supra, pág. 625.

Una sentencia es nula cuando se ha dictado sin jurisdicción o en violación del debido proceso de ley. *SLG Rivera-Pérez v. SLG Díaz-Doe, et al*, supra, pág. 657. Así, pues, la parte que meritoriamente ha levantado la defensa de nulidad debe prevalecer en su solicitud, independientemente de los méritos que pueda tener la defensa o reclamación del perjudicado. Ello, puesto que lo nulo no ha nacido a la vida jurídica.

Por otra parte, cabe señalar que la regla dispone un término fatal de seis (6) meses para la presentación del relevo de sentencia. *Bco. Santander P.R. v. Fajardo Farms Corp.,* 141 DPR 237, 243 (1996). Sin embargo, si la solicitud del remedio se basa en que el emplazamiento no se realizó conforme a derecho o que se cometió fraude al tribunal, el promovente podrá presentar la referida moción luego de transcurridos los seis (6) meses de haberse dictado la sentencia. *Íd.*, págs. 243-244. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, Sec. 4810, págs. 458-459. Nuestro Tribunal Supremo ha expresado que el dictamen que se emite en una acción en la cual el emplazamiento fue defectuoso, es nulo de su faz, puesto que el tribunal no puede adquirir jurisdicción sobre una persona que no se emplazó

correctamente. *Bco. Santander P.R. v. Fajardo Farms Corp.*, supra, pág. 244. Asimismo, ante una sentencia nula, no trascurren los términos, porque la nulidad es insubsanable. *J.A. Montañez v. Policía de Puerto Rico,* 150 DPR 917, 922 (2000); Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1ra ed. rev., 2012, pág. 297. Además, el Tribunal Supremo expresó recientemente que una parte que evita emplazar a una persona conforme a derecho comete fraude al tribunal. *Colón Vega v. Díaz Lebrón*, 2023 TSPR 27, 211 DPR 548 (2023).

A los fines de resolver este caso, aclaramos que la Regla 49. 2, *supra*, dispone que "[e]sta regla no limita el poder del tribunal para [c]onocer de un pleito independiente con el propósito de relevar a una parte de una sentencia, una orden o un procedimiento." A modo de ejemplo, acentuamos que en *Bco. Santander P.R. v. Fajardo Farms Corp.*, supra, se presentó una solicitud de relevo de sentencia luego de aproximadamente tres (3) años de haberse emitido el dictamen. El tribunal afirmó que, habiendo trascurrido más de seis (6) meses desde que se dictó la sentencia, lo propio era presentar un pleito independiente en el que se solicitara declarar nula la sentencia.

-C-

Nuestro sistema constitucional protege al ciudadano puertorriqueño contra todo acto de discrimen por razón de su género. Art. II, Sec. 1, Const. ELA. De este modo, nuestro ordenamiento legal ha protegido dicho principio mediante la promulgación de leyes laborales que prohíben toda práctica de discrimen por razón del sexo de una persona, entre estas: Ley Núm. 3 de 13 de

marzo de 1942 (Ley Núm. 3), 29 LPRA sec. 467 *et seq.*; la Ley Núm. 100 de 30 de junio de 1959 (Ley Núm. 100), 29 LPRA sec. 146 *et seq.*; y la Ley Núm. 69 de 6 de julio de 1985 (Ley Núm. 69), 29 LPRA sec. 1321 *et seq. López Fantauzzi v. 100% Natural,* 181 DPR 92, 114-115 (2011).

En particular, "[l]a Ley Núm. 3, *supra*, forma parte de un esquema trazado por el Estado para ofrecerle a la mujer obrera una mayor garantía contra el discrimen en el trabajo por razón de sexo." *Rivera Águila v. K-Mart de P.R.*, 123 DPR 599, 609 (1989). Su promulgación procuró proteger a la obrera embarazada, para que no sufriese riesgos en el trabajo ocasionados específicamente por razón de su estado de embarazo. *López Fantauzzi v. 100% Natural*, supra, pág. 115.

Así, la Ley Núm. 3, *supra*, dispone que toda mujer obrera y embarazada puede gozar de las siguientes protecciones fundamentales:

> a. Una licencia básica equivalente a un periodo de descanso de cuatro semanas antes y después del parto, a sueldo completo.
>
> b. Una licencia adicional de doce semanas en caso de una complicación en el parto, sin paga.
>
> c. La obligación del patrono de reservar el empleo de ésta, durante esas licencias.
>
> d. Una prohibición al patrono respecto al despido sin justa causa de la mujer embarazada, así como de discrimen por razón de embarazo. (Citas omitidas). *López Fantauzzi v. 100% Natural,* supra, pág. 116.

La sección 4 de la Ley Núm. 3, *supra*, establece que "[e]l patrono no podrá, sin justa causa, despedir a la mujer embarazada .... [Además,] [n]o se entenderá que es justa causa [para el despido] el menor rendimiento para el trabajo, por razón de embarazo." *Íd.*; 29 LPRA sec. 469. Es decir, "cuando una empleada reclama y prueba

que fue despedida de su empleo sin justa causa mientras estaba embarazada, el patrono responderá al amparo de la Ley [Núm. 3, *supra*,] a menos que logre establecer que el despido estuvo justificado." *Santiago v. Oriental Bank & Trust,* 157 DPR 250, 258 (2002). Así pues, la Ley Núm. 3, *supra*, establece una presunción de despido injustificado, la cual impone sobre el patrono el peso de establecer que existieron razones justificadas para el despido de la empleada, independientes al embarazo. *López Fantauzzi v. 100% Natural*, supra, págs. 116-117.

En síntesis, el Tribunal Supremo de Puerto Rico ha expresado que en reclamaciones al amparo de la Ley Núm. 3, *supra*, surge una presunción de despido injustificado que el patrono viene obligado a rebatir. *Rivera Águila v. K-Mart de P.R.*, supra, pág. 610. Es decir, es al patrono al que le corresponde persuadir al juzgador de la inexistencia del hecho presumido. *Íd*. Por tal motivo, el patrono viene obligado a alegar en su contestación los hechos que motivaron el despido y le corresponde probar, mediante la preponderancia de la evidencia, que el despido estuvo justificado. *López Fantauzzi v. 100% Natural*, supra, pág. 117.

A su vez, nuestro Tribunal Supremo dispuso en *Soc. de Gananciales v. Centro Gráfico,* 144 DPR 952, 960 (1998), que "[e]l requisito esencial para la aplicación de la Ley Núm. 3, *supra*, es que la mujer haya sido despedida durante su embarazo; ante ese hecho, le corresponde a la parte demandada el peso de probar que había justa causa … para terminar la relación obrero-patronal". (Énfasis en el original).

Hay que destacar que, en la situación particular de la mujer, el concepto justa causa no alberga el menor

rendimiento en el empleo de esta "cuando dicho menor rendimiento es consecuencia directa del estado de embarazo." *Santiago v. Oriental Bank & Trust*, supra, pág. 257. Así, pues, bajo esta ley surgen dos protecciones relacionadas al despido de una empleada embarazada: (1) la prohibición del despido sin justa causa, que se refiere al concepto justa causa bajo las leyes laborales, y (2) la prohibición de despido por merma en la producción como consecuencia del embarazo, lo cual, en el caso de una mujer en estado de gestación, no constituye justa causa para el despido. *Íd.*

Por otro lado, si el patrono no lograr refutar dicha presunción de despido injustificado, la Ley Núm. 3, *supra*, le impone a este ciertas sanciones, civiles y criminales, que le brindan mayor protección a la madre obrera injustamente despedida, en comparación con la protección mínima provista por la Ley Núm. 80, *supra*. *Íd.*, pág. 260. Véase, sección 6 de la Ley Núm. 3, 29 LPRA sec. 471.

-D-

La Ley Núm. 80 de 30 de mayo de 1976, conocida también como la *Ley de Despido Injustificado*, según enmendada, 29 LPRA sec. 185a *et seq.*, fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo. A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido injustificado. Véase: Exposición de Motivos de la Ley Núm. 80, *supra.*; *SLG Zapata-Rivera v. J.F. Montalvo*, 189

DPR 414, 424 (2013); *Feliciano Martes v. Sheraton*, 182 DPR 368 (2011).

El Artículo 2 de la Ley Núm. 80, 29 LPRA sec. 185b, detalla las circunstancias que constituyen "*justa causa*" para el despido e incluye motivos fundados en la conducta del empleado, así como circunstancias de índole empresarial. Así pues, en lo pertinente, las causas atribuibles a los empleados que constituyen justa causa para el despido se preceptúan en los incisos (a), (b) y (c) del Artículo 2, y son las siguientes:

> (a) Que el obrero siga un patrón de conducta impropia o desordenada.
>
> (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.
>
> (c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas por el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado. [...] 23 LPRA sec.185b.

No obstante, a pesar de que la Ley Núm. 80 provee una lista de circunstancias que justifican el despido de un empleado o empleada, la precitada ley no pretende ser un código de conducta limitada a una lista de faltas claramente definidas con sus sanciones correspondientes. *Jusino et als. V. Walgreens*, 155 DPR 560, 573 (2001). A estos efectos, el patrono tiene la potestad de adoptar reglamentos internos y establecer normas de conducta en el lugar de trabajo que estime necesarias para conseguir el buen funcionamiento de la empresa. *Íd.* Los empleados estarán sujetos a cumplir con dichos reglamentos y normas, siempre y cuando éstos cumplan con el criterio de razonabilidad. *Íd.* De este modo, para que las

violaciones de las normas del empleo constituyan justa causa para el despido, el patrono tiene la obligación de probar la razonabilidad de las normas establecidas, que le suministró copia escrita de éstas al empleado y que el empleado las violó. *Rivera Águila v. K-Mart de P.R.*, 123 DPR 599, 613-614 (1942). En cambio, no se considerará despido por justa causa aquel que se hace por el mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Srio. del Trabajo v. GP Inds., Inc.,* 153 DPR 223, 241 (2001).

En fin, el principio rector que gobierna el despido por justa causa dispuesto en el Artículo 2 de la Ley Núm. 80, *supra*, es aquel que delimita las circunstancias en que éste se produce. Es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. *Íd.*

Finalmente, el Artículo 11 de la Ley Núm. 80, crea una presunción de que todo despido es injustificado. 29 LPRA sec. 185k. Por ello, el patrono, mediante preponderancia de prueba, debe demostrar lo contrario, es decir, que en efecto hubo justa causa para el despido. *Rivera v. Pan Pepin*, 161 DPR 681,688 (2004*); Delgado Zayas v. Hosp. Interamericano*, 137 DPR 643, 650 (1994); *Rivera Ánguila v. K-Mart de* PR, supra, pág. 610.

### III.

En el caso de autos, la apelante le imputó al foro primario tres señalamientos de error, los cuales, por estar relacionados entre sí, los discutiremos en conjunto. En esencia, la señora Ayala alega que incidió

el foro *a quo* al denegar acoger su solicitud de relevo de sentencia, y no optar por medidas menos drásticas.

Según surge de los hechos procesales del caso, la señora Ayala comenzó a trabajar para Tocars Toyota el 13 de diciembre de 2021, bajo un Contrato de Periodo Probatorio y el cual disponía que el periodo sería por nueve (9) meses. Entre las funciones y responsabilidades esenciales que establece la descripción de su puesto eran: cobrar a los clientes; emitir recibos de pago por cada transacción; realizar cierres de caja diarios; realizar el cuadre de la caja; reportar a su supervisor cualquier situación o condición que ponga en riesgo, la seguridad, instrumentos negociable; entre otros. No obstante, durante el periodo probatorio, su supervisora le indicó en varias ocasiones cómo realizar ciertas funciones de su puesto, incluso le expresó repetidas veces que de tener alguna duda o pregunta se comunicara con ella, lo que nunca hizo. Aun así, la apelante continuó incumpliendo con las instrucciones y protocolos de la empresa, hasta el punto de que tuvo varios descuadres y faltas en los procesos administrativos de su puesto.

Consecuentemente, la señora Meléndez, el 2 de marzo de 2022, le recomendó y solicitó a la Gerente de Recursos Humanos de la empresa que no le fuera aprobado el periodo probatorio de la señora Ayala. Entre sus razones, se debía a que el rendimiento en su desempeño se encontraba por debajo de lo esperado. El mismo día, oficiales de Recursos Humanos se comunicaron con la señora Meléndez para indicarles que la nueva Analista de Caja comenzaría a trabajar el 14 de marzo de 2022.

El 3 de marzo de 2022, la señora Ayala se encontraba libre, y por medio de un mensaje de texto le indicó a su supervisora que estaba embarazada, y le envió una copia del resultado de laboratorio. Al día siguiente, el 4 de marzo de 2022, culminado el turno de la apelante le entregaron una carta indicándole que efectivo ese día, Tocars Toyota había decidido prescindir de sus servicios.

Con el trasfondo antes indicado, el Tribunal de Primera Instancia, luego de considerar el escrito presentado por la parte apelada, emitió *Sentencia* declarando *Ha Lugar* la solicitud de sentencia sumaria, y desestimando la querella. El foro primario particularmente dispuso: "[l]a querellante incurrió en negligencia predicada en múltiples errores en el manejo efectivo y de los procesos internos de la compañía, demostrando así un proceder negligente, deficiente e incompetente desde sus comienzos en la compañía y sin estar embarazada en ese momento."

Así las cosas, la señora Ayala presentó una solicitud de relevo de sentencia, la cual el foro primario acogió como una reconsideración. En esencia, reiteró que su despido fue uno discriminatorio, puesto que, una vez les informó que se encontraba embarazada fue despedida. Añadió que, como producto de la contestación que la parte apelada le brindó en el segundo interrogatorio, la carta dirigida a recursos humanos por parte de la señora Meléndez fue modificada y renombrada días después que fue despedida. Alega que, dicha carta es un documento falso, el cual fue creado para justificar la solicitud de sentencia sumaria. Por lo tanto, sostiene que hay razones para que se declare ha lugar la

solicitud de relevo de sentencia y se continúen los procedimientos en el foro primario. A su vez, indicó que no había podido objetar la solicitud de sentencia sumaria, a tiempo, por razones atribuibles a su representante legal.

Por su parte, Tocars Toyota expresó que lograron demostrar la intención de culminar la relación obrero-patronal con la señora Ayala, previo a conocer que estaba embarazada, puesto que, habían entrevistado y contratado a una candidata para la vacante de Analista de Caja. A su vez, sostienen que la apelante pretende presentar prueba que presuntamente no pudo traer previamente por negligencia u omisión por parte de su representante legal. Añadieron que, la parte tuvo suficiente tiempo para presentar su oposición a la solicitud de sentencia sumaria, puesto que, aun luego de que le enviaran la contestación al interrogatorio, transcurrieron sobre 40 días para que pudieran presentar su oposición, y aun así no lo hizo.

La Regla 49.2 de Procedimiento Civil, *supra*, es el mecanismo disponible para solicitarle al foro primario el relevo de una sentencia por los fundamentos allí expuestos. Es decir, para que proceda el relevo de la sentencia según la Regla 49.2 de Procedimiento Civil, *supra*, es necesario que el peticionario invoque por lo menos una de las razones enumeradas en dicha regla.

En el caso de autos, el foro primario acogió la solicitud de relevo de sentencia presentada por la apelante como una reconsideración. Sin embargo, según expusimos antes, estamos ante un procedimiento sumario laboral que culminó cuando el foro primario declaró ha lugar la solicitud de sentencia sumaria, y por

consiguiente desestimó la querella presentada. Conforme ha resuelto el Tribunal Supremo, las sentencias dictadas al amparo del procedimiento sumario laboral, no pueden ser objeto de reconsideración. Ello porque la reconsideración al interrumpir el término para acudir en alzada es un trámite procesal incompatible con el carácter sumario del procedimiento laboral en cuestión. Por lo tanto, incidió el foro primario al acoger la moción de relevo de sentencia como una reconsideración.

No obstante, luego de evaluar el expediente del caso, es evidente que la apelante no desplegó la debida diligencia en la búsqueda de toda la evidencia posible y descubrirla previo a que el foro primario dictara la *Sentencia*. Al ejercer nuestro rol revisor, tomamos en cuenta que la acción de relevo de sentencia bajo la Regla 49.2, *supra*, no es una llave maestra para dejar sin efecto sentencias válidamente dictadas. A su vez, nos llama la atención la dejadez del representante legal de la apelante, pues a pesar de solicitar las prórrogas y que el foro primario las concediera, transcurrió un largo término para que pudiera presentar su oposición, y optó por no tomar acción, sino hasta luego de culminado el procedimiento.

Por otra parte, este Tribunal es consciente de que una causa de acción incoada de conformidad con la Ley Núm. 3, *supra*, establece una presunción de que, cuando una mujer embarazada es despedida de su empleo, dicho despido fue discriminatorio por razón de su estado de embarazo. Sin embargo, como ocurre con toda presunción, el patrono cuenta con la oportunidad de presentar prueba que rebata dicha presunción y que le ayude a establecer que hubo justa causa para el despido.

En adición, la Ley Núm. 80, *supra*, dispone que la violación reiterada de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento, constituyen justa causa para el despido de un trabajador. Ello, siempre que al empleado se le haya suministrado oportunamente copia escrita de tales reglas y reglamentos.

En el caso de autos, la señora Ayala comunicó su embarazo el 3 de marzo de 2022, y al día siguiente le entregaron la carta indicándole que la empresa prescindía de sus servicios. Por lo general, esta decisión es suficiente para incoar una causa de acción de acuerdo con la Ley Núm. 3, *supra*. Sin embargo, Tocars Toyota logró rebatir la presunción de despido discriminatorio al demostrar que, previo al anuncio del embarazo de la señora Ayala, habían tomado la decisión de no aprobar el periodo probatorio, debido a su negligencia y desempeño en las labores requeridas para su puesto. A su vez, demostraron que habían entrevistado y contratado a una persona para cubrir la vacante de Analista de Caja.

Independientemente de los aspectos sustantivos de la sentencia, concluimos que la peticionaria no logró establecer los criterios para que procediera la solicitud de relevo de sentencia bajo la Regla 49.2 de Procedimiento Cvivil, *supra*. La señora Ayala alegó que el apelado cometió fraude al Tribunal al ocultarle un documento en su petición de sentencia sumaria. La señora Ayala no tiene razón en lo expuesto. Era el deber de la representación legal de la apelante presentar a tiempo su oposición a la referida moción de sentencia sumaria con los documentos necesarios para promover sus

argumentos. Como antes indicado, los abogados de la señora Ayala no fueron diligentes en oponerse a dicha moción. Estos admitieron que "[e]l suscribiente abogado no pudo someter a tiempo la oposición a sentencia sumaria, ni se solicitó por error y negligencia excusable tiempo adicional para oponerse…".[13]

Ante estos hechos, es forzoso concluir que el dictamen apelado es correcto en derecho, y el foro primario no incidió al denegar la solicitud de relevo de sentencia.

**IV.**

Por los fundamentos antes expuestos, **EXPEDIMOS** el auto de *Certiorari* y **CONFIRMAMOS** la *Orden* dictada el 9 de enero de 2024.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[13] *Apelación*, pag. 4.